1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DENA MARIE WILLIS, | CASE NO. C14-5890 MJP |
| Plaintiff, | ORDER ON SOCIAL SECURITY APPEAL |
| v. | |
| CAROLYN COLVIN, | |
| Defendant. | |

Plaintiff Denamarie Willis appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). Having reviewed the Parties' briefing and the administrative record, the Court REVERSES and REMANDS the matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. 402(g).

ORDER ON SOCIAL SECURITY APPEAL- 1

BASIC DATA

Type of benefits sought:

( X ) Supplemental Security Income – Disability

( X ) Disability Insurance

Plaintiff:

Sex:  F

Age: 40 at alleged onset date

Principal Disabilities Alleged by Plaintiff:  major depression with psychotic features, bipolar disorder, borderline personality disorder, anxiety, migraine headaches, bilateral carpal tunnel, degenerative disc disease of the lumbar, diabetes, osteoarthritis of the left hip and some evidence of chronic lumbar pain with radiculopathy, particularly into the right leg and numbness into the right foot. (Dkt. No. 22 at 2.)

Alleged Disability Onset Date: November 1, 2005 (AR 420)

Relevant Initial Disability Period: March 11, 2008–October 18, 2011 (AR 420)

Relevant Second Disability Period: October 19, 2011–May 31, 2013 (AR 421)

Principal Previous Work Experience: apartment manager, leasing agent, customer service representative, and cashier II (AR 429)

Education Level Achieved by Plaintiff: High school education (AR at 430)

PROCEDURAL HISTORY

Before ALJ:

Date of Hearing: February 26, 2013

Date of Decision: May 31, 2013

Appears in Record at:  Decision – AR 416–431; Hearing Transcript 440–532

Summary of Decision:

1. Claimant meets the insured status requirement through June 30, 2008 (AR 420);

2. Claimant has not engaged in substantial gainful activity since November 1, 2005, the alleged onset date (id.);

3. Claimant has the following severe impairments from March 11, 2008 to October 18, 2011: diabetes mellitus, major depressive disorder, and bipolar disorder (id.);

4. Claimant has the following severe impairments from October 19, 2011 through May 31, 2013: diabetes mellitus, carpal tunnel syndrome, major depressive disorder, and bipolar disorder (AR at 421);

5. Claimant does not have an impairment or combination of impairments that meets one of the listings (id.);

6. From March 11, 2008, through October 18, 2011, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant is able to occasionally climb ladders, ropes and scaffolds. The claimant is able to frequently climb ramps and stairs, and frequently balance, stoop, kneel, crouch, and crawl. The claimant is able to work in an environment where she is able to avoid concentrated exposure to vibration and hazards. The claimant is able to perform simple routine tasks that do not involve manufacturing-style production rate or pace work. She is able to work in an environment where there are no more than occasional changes in the work setting. The claimant is able to have occasional interaction with supervisors. The claimant is able to be around co-workers, but is only able to interact with them occasionally. The claimant is able to have only superficial interaction with the public. From October19, 2011, through May 31, 2013, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant is able to occasionally climb ladders, ropes and scaffolds. The claimant is able to frequently climb ramps and stairs, and frequently balance, stoop, kneel, crouch, and crawl. The claimant is able to frequently fmger and feel bilaterally. The claimant is able to work in an environment where she is able to avoid concentrated exposure to vibration and hazards. The claimant is able to perform simple routine tasks that do not involve manufacturing-style production rate or pace work. She is able to work in an environment where there are no more than occasional changes in the work setting. The claimant is able to have occasional interaction with supervisors. The claimant is able to be around coworkers, but is only able to interact with them occasionally. The claimant is able to have only superficial interaction with the public. (AR 423);

7. Claimant is unable to perform any past relevant work (AR 429);

8. Claimant was 40 years old, defined as a younger individual, on the alleged disability onset date (AR 429);

9. Claimant has at least a high school education and is able to communicate in English (AR 430);

10. Transferability of job skills is not material because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (AR 431);

ORDER ON SOCIAL SECURITY APPEAL- 3

     11. In the alternative, considering claimant's age, education, work experience, and residual functional capacity, there were other jobs that exist in significant numbers in the national economy that claimant also could have performed during both periods (AR 430);

     12. Claimant was not under a disability from November 1, 2005 through May 31, 2013 (AR 431).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court must set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

## EVALUATING DISABILITY

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such

severity that he is unable to do his previous work, and cannot, considering age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); see also Tackett v. Apfel, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  See also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).

## ISSUES ON APPEAL

1. Whether the ALJ erred by rejecting the opinion of David Widlan, Ph.D.
2. Whether the ALJ erred by rejecting the opinion of Alicia Grattan, M.D.
3. Whether the ALJ erred by rejecting the opinion of Ryan Riel, M.D.
4. Whether the ALJ erred by rejecting the opinion of Marie Crawford, M.H.P.
5. Whether the ALJ erred by rejecting Plaintiff's testimony
6. Whether the ALJ erred by rejecting the lay witness testimony of Judy Bevilacqua, Alexandra Berrera-Rhodes, and Marquise A. Willis
7. Whether the ALJ erred in assessing Plaintiff's residual functional capacity and ability to perform jobs that exist in significant numbers in the national economy

## DISCUSSION

I.  Medical Opinions

If the ALJ rejects an examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).

A.  David Widlan, Ph.D. and Alicia Grattan, M.D.

1           The ALJ discounted two consultative psychological examiners because Plaintiff's
2    presentation to them regarding symptoms including "mood swings, depressed mood, irritability,
3    anxiousness, and some audio/visual hallucinations" was allegedly inconsistent with Plaintiff's
4    presentation to her treating prescriber, Ms. Kampf. (AR 424–25, 428–29.) The alleged
5    inconsistencies cited by the ALJ are neither legitimate nor based on substantial evidence in the
6    record. Regarding a November 11, 2008, session with Ms. Kampf, the ALJ stated that Plaintiff
7    "reported that everything was fine and she was having no problems." (AR 425.) But those
8    statements are related to Plaintiff's having received laboratory results from her primary care
9    physician (see AR 381), and in the same session Plaintiff reported paranoia, suicidal ideation,
10   and hallucinations (AR 380, 378). That report concluded that "Client continues to have
11   depression, psychosis, and anxiety," and Ms. Kampf increased her medication. (AR 380.) The
12   ALJ believed the notation "doing OK" in Ms. Kampf's notes contradicted the symptoms
13   described by Dr. Widlan and Dr. Grattan even where the same reports noted that Plaintiff
14   "[s]ometimes feels [S]atan is going to get her" and "feel[s] his presence" (AR 934) or was
15   experiencing other hallucinations (see, e.g., AR  939, 944, 976, 1196, 1198, 1211, 1213, 1226,
16   1241). Reliance on such "doing OK" notations made by treating providers is not an acceptable
17   method of discounting medical opinions. See Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir.
18   2014) (quoting Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that
19   the Commissioner erroneously relied too heavily on indications in the medical record that
20   Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no
21   necessary relation to a claimant's ability to work or to her work-related functional capacity.")).
22           Dr. Grattan, meanwhile, reviewed Ms. Kampf's records in order to render her opinion
23   and did not note any inconsistencies in Plaintiff's presentation to her as compared to in those
24

1  records. (AR 1080.) The ALJ also discounted Dr. Grattan's opinion because of an alleged

2  inconsistency between Plaintiff's statement to Dr. Widlan that she stopped working after giving

3  birth and her statement to Dr. Grattan that she would not have been fired if she were Caucasian.

4  (AR 428.) Any tension between these statements does not rise to the level of a legitimate reason

5  to discount Dr. Grattan's opinion. (See also Section II, Plaintiff's Credibility, below.) The ALJ

6  further discounted Dr. Grattan's opinion because Plaintiff reported to Dr. Grattan on February

7  19, 2011, that she was not sleeping, while her reports to Ms. Kampf reflected that she was

8  "experiencing minimal difficulty in this area." (AR 428.) However, the record of Ms. Kampf's

9  that is most proximate to the date of the allegedly inconsistent examination (February 4, 2011),

10 reflects that Plaintiff "still has some sleep disturbance" (AR 1375). The ALJ failed to cite those

11 notes or any records from the relevant time period, contained in original Exhibit B28F. Finally,

12 the ALJ discounted Dr. Grattan's opinion that "the claimant had difficulty accepting instructions

13 from supervisors," saying that it was based on Plaintiff's self-report and "is inconsistent with the

14 record as a whole" (AR 429), even though the ALJ had previously given great weight to Dr.

15 Peterson's identical opinion that Plaintiff "would have difficulty interacting with supervisors,"

16 saying this opinion was fully "consistent with the record as a whole." (AR 426.) The ALJ failed

17 to point to any legitimate reason to reject Dr. Grattan's opinion.

18       B.  Dr. Riel

19       Plaintiff next argues the ALJ did not account for the carpal tunnel diagnosis of Dr. Riel in

20 the RFC. (Dkt. No. 22 at 7–8.) The ALJ does not appear to have incorporated functional

21 limitations into Plaintiff's RFC due to Plaintiff's diagnosed carpal tunnel syndrome. It is true that

22 on the one hand, the ALJ accepted Dr. Riel's opinion and stated that "claimant's carpal tunnel

23 syndrome causes more than minimal limitation on the claimant's ability to perform work-related

24

activities" for the period from October 19, 2011, through May 31, 2013. (AR 421.) The ALJ also explained that "[f]urther restrictions regarding the claimant's ability to finger and feel" became appropriate only once "subsequent medical evidence of record established the medically determinable impairment of carpal tunnel syndrome." (AR 427.) On the other hand, the ALJ's RFC does not appear to reflect any real limitations as a result of her carpal tunnel diagnosis. The RFC has no reference to fingering and feeling for the March 11, 2008, to October 18, 2011, time period, and then adds the qualification that "[t]he claimant is able to <u>frequently</u> finger and feel bilaterally" for the period in which the ALJ accepted the carpal tunnel diagnosis. (AR 423 (emphasis added).) The Commissioner also points to the ALJ's "manufacturing-style production or pace work" limitation (Dkt. No. 24 at 13), but that limitation did not change between the pre- and post-carpal tunnel periods. (<u>See</u> AR 423.) While an ALJ's RFC finding need not be identical to credible medical opinions, it does need to account for each of the medically determinable impairments. <u>See</u> 20 C.F.R. §§ 416.945(a)(2) ("We will consider all of your medically determinable impairments . . . when we assess your [RFC]."). This RFC finding failed to account for Plaintiff's carpal tunnel diagnosis or explain how it allowed for "frequent" fingering and feeling bilaterally.

II.     Plaintiff's Credibility

The ALJ rejected Plaintiff's description of the symptoms and limitations of her impairments because they were allegedly "inconsistent" and "unpersuasive." (AR 424.) The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making at least "specific, cogent" findings, supported in the record, to justify discounting such testimony. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the

claimant's testimony must be "clear and convincing." Id. To the extent Plaintiff's symptoms were not entirely consistent over time, the Ninth Circuit has cautioned that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). To the extent that the ALJ concluded that Plaintiff's description of her attitude, feelings of hopelessness and worthlessness, and hallucinations was inconsistent with her medical records, the ALJ erred because Ms. Kampf consistently noted such symptoms. (See generally Sound Mental Health records; Section I(A), above.) The ALJ also saw inconsistencies where there were none, for example by writing without citation that "claimant testified that she stays in her room all the time" (AR 426), when Plaintiff actually testified in what is presumably the same statement 1) that "I'm constantly hiding in my room" (AR 479), 2) that she is "scared to go out of my house sometimes" (AR 478), 3) that "there's days that I don't even come out [of my room]" (AR 479). Earlier in the transcript she stated that after she drives her children "just down the street" to school, "[s]ometimes I'll stay in my room." (AR 465.) When the transcript statements are viewed in context, there is no conflict between statements about staying in her room and her representations with respect to care for her family members and being occasionally involved in church activities.

The ALJ also erred by substituting his opinion for doctors' opinions by attributing Plaintiff's symptoms to "situational stressors" regarding financial matters and family tensions rather than her impairments. (AR 425.) See Tackett v. Apfel, 180 F.3d 1094, 1102–03 (9th Cir.

1999) (ALJ may not substitute his own interpretation of the medical evidence for the opinion of medical professionals); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony). The examining physicians and Ms. Kampf were all aware of the situational stressors to which the ALJ alludes and yet they did not attribute her symptoms to these stressors.

## Conclusion

Having found reversible error, the Court does not reach the remaining errors assigned by Plaintiff. On remand, the ALJ should review Plaintiff's case de novo, considering the opinions of Drs. Widlan and Grattan along with the other evidence, and should also consider any new evidence Plaintiff may choose to submit. The Commissioner's decision is REVERSED and the case REMANDED for further proceedings consistent with this order.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 16th day of October, 2015.

Marsha J. Pechman
Chief United States District Judge